**TWENTIETH CENTURY–FOX FILM CORPORATION, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**No. 52, Docket 30467.**

United States Court of Appeals Second Circuit.

Argued Dec. 14, 1966.

Decided Jan. 27, 1967.

Robert E. Frisch, New York City (Robert P. Luciano, William P. Hurley, Royall, Koegel & Rogers, New York City, of counsel), for appellant.

Richard C. Pugh, First Asst. to the Asst. Atty. Gen. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Fred R. Becker, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before WATERMAN, MOORE and KAUFMAN, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

Whatever else he has called, the Commissioner of Internal Revenue is rarely classified as a film critic. This does not mean that the Commissioner is without his opinions on matters cinematic. Take, for example, "A Streetcar Named Desire" (Streetcar), the film version of Tennessee Williams' play, which is the subject of the present appeal. When Streetcar was originally released it was widely hailed, with many terming the picture "a work of art." The Commissioner appears to prefer a slightly different phrase; he thinks Streetcar is a "depreciable asset."

Unlike most aesthetic judgments, the validity of the Commissioner's determination has immediate monetary significance, as it lies at the heart of this appeal from a Tax Court decision holding Twentieth Century-Fox Film Corporation (Fox) liable for a tax deficiency of $67,500 which was assessed against Charles K. Feldman Group Productions (Group). 45 T.C. 137 (1965). Fox is the transferee of Group's assets and concedes its own liability if Group is in fact liable for the deficiency. The sole issue presented for our determination is whether the gain realized by Group from the sale of all its rights in Streetcar to its controlling shareholder, Charles K. Feldman, was ordinary income or capital gain. And, the answer to the question depends on whether the film "in the hands of * * * [Feldman] * * * [was] property of a character which is subject to the allowance for depreciation provided in section 167." Internal Revenue Code of 1954 (Code) § 1239, 26 U.S.C. § 1239.

Group was a California corporation, organized in 1937. From its inception, Charles K. Feldman owned all of Group's outstanding preferred stock, and 96.25% of the outstanding common. The corporation engaged generally in the business of acquiring and preparing various literary properties (novels, plays, short stories, etc.) for use as motion pictures. Group derived its income from licensing others to use these properties, and from the rentals it received from motion pictures it produced.[1]

In March 1955, Fox offered to purchase either the assets of Group or all of its outstanding stock for $1,650,000.[2] Feldman thereupon requested the Internal Revenue Service (Service) to rule on

---

1. Group produced three motion pictures and invested $100,000 in a joint venture to produce a fourth.

2. At the time, Group had motion picture rights in such literary classics as "The Sun Also Rises," "The Glass Menagerie," as well as "A Streetcar Named Desire."

whether the proceeds he would receive from the sale of his Group stock could be treated as long-term capital gains. It soon became apparent that a favorable ruling might be jeopardized because of the likelihood that Group was a "collapsible corporation"—in which case the gain Feldman would realize from the sale of his stock would be taxable as ordinary income. Code § 341(a), 26 U.S.C. § 341(a).

Eventually, however, the Service made it known that a ruling favorable to Feldman would be made upon the condition that prior to the sale of his stock, Group sold all the rights it held in the cinema classic Streetcar. In order to obtain this ruling, Feldman personally agreed to purchase the film from Group,[3] and on September 1, 1955 the sale took place.[4] A week later Fox bought all of Group's outstanding stock. On its federal income tax return for 1955, Group reported the $250,000 it received from Feldman for Streetcar as a long-term capital gain, and paid a tax of $62,500.[5]

In order to determine whether this capital gains treatment was proper, we must explore briefly the history of Streetcar. The film was, of course, based on the play of the same name written by Tennessee Williams. In 1949, Mr. Williams granted Group the exclusive motion picture rights to his play.[6] Group proceeded to have four screen adaptations prepared, the last of which served as the basis for the film. The production was financed by Group and Warner Brothers, Inc. (Warner) pursuant to an agreement entered into in 1949. The contract provided that Group would own the motion picture, its copyright, and the actual films themselves, and would receive a share of the receipts that resulted from the motion picture's distribution. Warner, on the other hand, acquired the distribution rights.

Streetcar was released for general exhibition in 1951, and Group began receiving its share of the distribution receipts. In 1955, however, a dispute arose concerning Warner's accounting of the funds it received from the distribution of the motion picture. As a result, on March 8, 1955 the agreement between Warner and Group was modified to provide that through January 1, 1958 Warner would retain all proceeds arising from its distribution of Streetcar. On that date, Warner's rights in Streetcar and the income therefrom would terminate, and Group would have all rights in the film. When Feldman purchased Streetcar from Group in September 1955 he took it subject to this amended agreement. Feldman held the film until October 31, 1957, at which time he sold it to Fox.[7]

It is the Commissioner's position that Group's gain from the sale of Streetcar to Feldman in 1955 was ordinary income. The Commissioner, as we have stated, relies on § 1239 of the 1954 Code which provides:

(a) Treatment of gain as ordinary income.—In the case of a sale or exchange, directly or indirectly, of property in subsection (b)—

\* \* \* \* \* \*

(2) between an individual and a corporation more than 80 percent in value of the outstanding stock of

3. By letter dated August 12, 1955, the Service formally ruled that Feldman's gain from the sale of his stock would be taxed as a long term capital gain if he first purchased Streetcar from Group.

4. This was Group's only sale of a motion picture.

5. By the end of 1952, Group had completely amortized its investment in Streetcar for both book and tax purposes. Therefore, at the time of the sale to Feldman, Group had a tax basis of zero in the motion picture.

6. Under the terms of the agreement, Williams agreed to receive $350,000, plus 10% of the gross receipts from the distribution of the motion picture produced after the receipts exceeded 190% of the production costs.

7. Feldman received $250,000 plus 50% of the net receipts in excess of $250,000 from the release of Streetcar for theatrical exhibition.

which is owned by such individual * * * 8

any gain recognized *to* the transferor from the sale or exchange of such property shall be considered as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231.

(b) Section applicable only to sales or exchanges of depreciable property.— This section shall apply only in the case of a sale or exchange by a transferor of property which in the hands of the transferee is property of a character which is subject to the allowance for depreciation provided in section 167.

The allowance for depreciation contained in § 167, 26 U.S.C. § 167, is limited to "(1) * * * property used in the trade or business, or (2) * * * property held for the production of income." The Commissioner does not contend that Streetcar was held by Feldman for use in trade or business; rather, we are urged to affirm the Tax Court's finding that the motion picture was held for the production of income.

Fox states its position succinctly. It submits that in light of the amended agreement between Warner and Group, it was impossible for Feldman to realize any income from Streetcar during the time he owned it. Therefore, Fox, argues, Feldman was not entitled to a depreciation allowance under § 167 because the film was not "property held for the production of income." If no depreciation allowance was permitted, argues Fox, § 1239 does not apply and Group properly treated its gain from the sale of Streetcar as a capital gain.

■■ The difficulty with the house Fox builds is that the foundation—Feld-

man's inability to realize income from the film—rests on quicksand.[9] It is true that Feldman purchased Streetcar subject to Warner's rights, and that the agreement between Warner and Group was in effect during the entire period Feldman held title to the motion picture. The agreement, as we have already noted, provided that through January 1, 1958, Warner did not have to account to Group for the proceeds it received from distributing Streetcar. However, the agreement also stated:

> From and after the date hereof [March 8, 1955] WARNER shall *not be entitled to generally re-issue* the photoplay in any country or territory of the world * * * but WARNER shall be entitled to and hereby is authorized to continue to distribute and license others to exhibit the photoplay; to grant non-affiliated distributors the right or rights to distribute the photoplay *in countries or territories where such right has not already been granted by Warner* * * *. (Emphasis added.)

And a rider to the agreement further provided that:

> commencing forty-five (45) days from the date hereof, *Warner shall not thereafter distribute or license* the exhibition of the photoplay in such cities in the United States or Canada *where said photoplay has heretofore been exhibited.* (Emphasis added.)

It is apparent, therefore, that Group retained the right to re-issue the motion picture or to license or distribute it in American and Canadian cities where it had previously been shown; and Feldman succeeded Group to this right. We cannot fault this finding of the Tax Court.

---

8. Fox stipulated that Feldman owned more than 80% in value of the outstanding Group stock.

9. The Commissioner's factual determination that Streetcar was held by Fox for the production of income was presumptively correct. See Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212

(1933). In the Tax Court, therefore, Fox had the burden of proving that the motion picture was not held for this purpose; and before this Court the taxpayer has the burden of showing that the Tax Court's finding is clearly erroneous. See Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L. Ed.2d 1218 (1960).

Fox urges us to analogize Feldman to a builder of residential homes, who purchases one of his own structures for personal use. Selling that house later, Fox argues, would not establish that the builder had held it for the production of income. But this analogy does not stand up since the equivalent situation is not present here. The argument would have weight if Fox claimed, which it does not for obvious reasons, that Feldman purchased Streetcar solely for his private use—for example, to be shown on his home movie projector for the benefit of himself and his fortunate friends. But no one seriously suggests that Feldman intended that the motion picture, which was a box-office success, was to become a family heirloom, viewed as a master's painting, but never exhibited outside of the Feldman home. Such a suggestion would, of course, be absurd in light of Feldman's background in the industry. He was no dilettante, engaged in motion pictures merely to enjoy the glamor. In fact, he had accumulated wide experience in licensing literary works and motion pictures. When questioned as to whether any effort had been made to license or rent Streetcar during the questioned period, Feldman frankly replied, "Yes. There was effort on my part, to a degree, and effort on other people's part to acquire the property, but nothing came of it." The record, therefore, is not devoid of basis for the Tax Court's findings which we believe were not clearly erroneous; indeed, Streetcar was held by Feldman for the production of income.

In so holding, we agree with the conclusion reached by the Tax Court that the failure to *actually realize* income or to take deductions for depreciation is not crucial. It is settled law that such deductions may be taken on property that is not currently producing income. Kittredge v. Commissioner of Internal Revenue, 88 F.2d 632 (2d Cir. 1937). And, while it is true that in *Kittredge* the property in question had at one time produced income for the taxpayer, our recent holding in Sears Oil Co. v. Commissioner of Internal Revenue, 359 F.2d 191 (2d Cir. 1966) is even more apposite. In *Sears,* a barge which had been ready for use in December was not actually put in operation until the following May because it had been frozen into a river. Nevertheless, we allowed depreciation deductions for that period stating, "It seems only proper, in order to reflect the gradual deterioration of the completed asset that was taking place * * *." 359 F.2d at 198. Feldman's right to take depreciation deductions is even clearer since unlike *Sears* there was no physical impossibility that prevented him from realizing income.[10] Indeed, given the warm reception the film received, there might well have been more mileage left in Feldman's Streetcar than in Sears' barge.

In sum, although we concede that Tennessee Williams would not have used precisely those words, we agree that Streetcar was indeed a "depreciable asset," and that consequently Group's gain was ordinary income under § 1239.[11]

Affirmed.

10. Fox mistakenly relies on Revenue Rulings 60–358 and 64–283 to prove that Feldman was not entitled to take depreciation deductions. These Rulings were not adopted until some years after Feldman had sold Streetcar, and there is no showing that they reflect the policy of the Internal Revenue Service during the period he held the motion picture.

11. The Commissioner urges as another ground for affirmance that even assuming *arguendo* that Feldman could not have claimed depreciation until he entered a distribution agreement for Streetcar and that he could not have distributed the motion picture until 1958 when Warner's rights expired, the film, nevertheless, was "property *of a character* which is subject to an allowance for depreciation." (Emphasis added.) He contends that § 1239 is applicable even if the transferee cannot immediately depreciate the transferred property. We need not reach this argument since we affirm the Tax Court's finding that Feldman was entitled to depreciation deductions during the entire period that he held Streetcar.