Homer Z. GOATCHER, and Margaret
E. Goatcher, husband and wife,
Plaintiffs–Appellants,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 91–5058.

United States Court of Appeals,
Tenth Circuit.

Sept. 10, 1991.

748

E. John Eagleton, Charles D. Harrison, and Thomas G. Potts of Houston and Klein, Inc., Tulsa, Okl., on the briefs, for plaintiffs-appellants.

Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Ann B. Durney, and Teresa E. McLaughlin, Dept. of Justice, Washington, D.C., on the briefs, for defendant-appellee.

Before ANDERSON, TACHA and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Plaintiffs (Taxpayers) sued in district court for a federal income tax refund contending they were entitled to (1) a higher investment tax credit, and (2) a higher net operating loss deduction, both being attributable to their small business corporation, which is known as a subchapter S corporation by the Internal Revenue Service (IRS). Taxpayers appeal an adverse decision.

## I. BACKGROUND

Taxpayers are husband and wife who formed an Oklahoma corporation to construct and operate a cable TV system in four Oklahoma communities. Taxpayers paid $1,000 to the corporation and in return received all issued capital stock. Taxpayers were the corporation's sole shareholders, directors and officers. The corporation qualified as a small business corporation (subchapter S corporation) under the Internal Revenue Code (I.R.C.).

The corporation went to its banker and through a series of loans borrowed in excess of $1,000,000. Taxpayers personally guaranteed these loans although they were never called upon to pay their guarantees. From these borrowed funds, the corporation purchased approximately $800,000 worth of equipment.

As would be expected with a new company with substantial depreciable assets, the corporation suffered a substantial net operating loss during its first two years of operation, which are the tax years in question. Its 1982 operating loss was approximately $50,000, while its 1983 operating loss was approximately $41,000.

As the corporation was a subchapter S corporation, Taxpayers claimed an investment tax credit for the equipment the corporation purchased. They also claimed a net operating loss deduction due to the financial losses sustained by the corporation.

Taxpayers were, however, audited by the IRS, and the IRS disallowed the investment tax credit and most of the net operating loss deduction. The IRS disallowed the investment tax credit because it said Taxpayers were not "at risk" with respect to the money invested by the corporation in the property. The net operating loss deduction was limited to $1,000, which is the amount of Taxpayers' actual cash investment in the corporation. The IRS disallowed Taxpayers' deduction of corporate losses to the extent the deduction exceeded $1,000. As a result of these IRS actions, Taxpayers' tax liability to the federal government increased by approximately $45,000 for 1982 and $75,000 for 1983. Taxpayers paid the additional tax, plus interest and penalties, and sued in federal district court for a refund. The matter is here on appeal following the district court's summary judgment in favor of the IRS. Because the matter was decided on summary judgment, our review on appeal is de novo. *See Associated Wholesale Grocers, Inc. v. United States*, 927 F.2d 1517, 1519 (10th Cir.1991). We first consider Taxpayers' arguments regarding the claim of investment tax credits, followed by their arguments concerning the net operating loss.

## II. THE INVESTMENT CREDITS

The tax returns at issue here involve the 1982 and 1983 tax years. Under the law then existing, Taxpayers were entitled to the investment tax credits for eligible property purchased by the corporation. However, the law specified, "the basis of such property ... shall not exceed the amount the taxpayer is *at risk* with respect to such property."[1] I.R.C. § 46(c)(8) (emphasis added). Section 46(c)(8)(B)(i) defines

---

1. All references to the Internal Revenue Code in this opinion are to the Code as it existed in 1982–83. The Code has since been amended by the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085, Sec. 2.

the "at risk" limitation by using the definition set forth in I.R.C. § 465(b). *See* I.R.C. § 46(c)(8)(B)(i). Under I.R.C. § 465(b), a taxpayer is generally considered "at risk" for an activity to the extent of the cash contributed to the activity, I.R.C. § 465(b)(1)(A), as well as any amounts borrowed for use in the activity to the extent the taxpayer "is personally liable for the repayment of such amounts." I.R.C. § 465(b)(2)(A). On the other hand, a portion of § 465(b) also provides that a taxpayer is not "at risk" with respect to "amounts protected against loss through nonrecourse financing, *guarantees,* stop loss agreements, or other similar arrangements." I.R.C. § 465(b)(4) (emphasis added).

Taxpayers first point to selected portions of former I.R.C. §§ 38, 46, and 48, all of which set forth the general rule that a subchapter S corporation's loss shall be apportioned among the persons who are shareholders. Taxpayers argue that because they are shareholders, and because the corporation had a loss, they are clearly and unambiguously entitled to deduct the loss. This argument fails because, as already noted, § 46(c)(8) sets forth an exception to the general rule Taxpayers cite. It is the exception—as specifically outlined in I.R.C. 465(b)(4)—that applies to the facts at hand.

■ In this case, Taxpayers are not personally liable for the repayment of the loan because the loan was to the corporation and not to Taxpayers. Although Taxpayers guaranteed the loans, that fact does not help them. In Oklahoma, a loan guarantor is not required to repay a loan unless the principal debtor defaults. *Lum v. Lee Way Motor Freight, Inc.,* 757 P.2d 810, 814 (Okla.1987). In addition, a guarantor in Oklahoma has a remedy against the primary obligor. The guarantor can recover from the primary obligor any amounts he has to pay a creditor. *Moore v. White,* 603 P.2d 1119, 1121 (Okla.1979). We therefore

agree with the IRS that in these circumstances, where the taxpayer is only secondarily liable for the loan as a guarantor, the taxpayer is not personally liable for the loan within the meaning of I.R.C. § 465(b).

We are not the only court to reach this conclusion. The Ninth Circuit, in two cases, has likewise held that even if a taxpayer is considered personally liable with respect to a loan, he nevertheless is not "at risk" with respect to the loan to the extent that he has a right of contribution from others for that debt, because he is protected against loss. *See Casebeer v. Commissioner,* 909 F.2d 1360, 1368–70 (9th Cir. 1990), and *Melvin v. Commissioner,* 894 F.2d 1072, 1076 (9th Cir.1990).

■ Taxpayers nevertheless still argue their loan guarantees were in fact an original promise. In support of their position, Taxpayers cite Okla.Stat. tit. 15 § 325(2), which provides that a promise to answer for the debt of another is deemed an original obligation of the promisor. The unambiguous loan documentation in the case before us clearly establishes the corporation to be the debtor and Taxpayers to be the guarantor and not the original promisor. The Oklahoma statute Taxpayers cite has no application to the case before us.

■ Taxpayers next point to I.R.C. § 46(c)(8)(C), and rely on legislative history describing the section. According to the Conference Committee Report description of the House Bill, "amounts owed to qualified lenders are considered at risk even if the taxpayer is not personally required to repay the debt." Conf.Rep. No. 215, 97th Cong., 1st Sess (1981), U.S.Code Cong. & Admin.News 1981, pp. 105, 306. However, this legislative history, even assuming it applies to Taxpayers' case, is not helpful since it is contrary to the specific statutory language where the term "at risk" is defined. *See* I.R.C. § 465(b). It is the clear and specific language of the statute that we follow and not the legislative history.[2]

---

**2.** We further note the IRS cites relevant legislative history addressing the meaning of the term "at risk." According to a Senate Report, a mere guarantor of a loan is not at risk "until the time when the taxpayer becomes unconditionally en-

titled to payment [from the defaulting borrower] and, at that time [the taxpayer], demonstrates that he cannot recover [from the defaulting borrower]." S.Rep. No. 938, 94th Cong, 2d

Moreover, we agree with the IRS that the provisions of § 46(c)(8)(C) cited by Taxpayers do not apply to this case. Section 46(c)(8)(C) is qualified by § 46(c)(8)(B)(ii). In the qualifying section, a person is defined as "at risk" if, among other reasons, he is "at risk ... in an amount equal to at least 20 percent of the basis ... of property." As we have already held, Taxpayers here were not at risk for any of the loan to the corporation. Thus, Taxpayers cannot rely on § 46(c)(8)(C) as qualified by § 46(c)(8)(B)(ii).

Finally, Taxpayers argue the district court erred in applying the decision in *Estate of Leavitt v. Commissioner*, 875 F.2d 420 (4th Cir.), *cert. denied*, 493 U.S. 958, 110 S.Ct. 376, 107 L.Ed.2d 361 (1989), to the investment tax credit issue in this case. Taxpayers point out *Leavitt* deals solely with the net operating loss deduction of a subchapter S corporation and not investment tax credits. *Id.* at 421. Assuming that *Leavitt* does not apply to this issue for the reason advanced by Taxpayers, we still affirm the district court since—as already determined—we believe the district court correctly decided that Taxpayers were not "at risk" of financial loss within the meaning of I.R.C. § 46 when they merely guaranteed the corporate loans. *See* I.R.C. §§ 46(c)(8), 465(b)(4).

### III. THE NET OPERATING LOSS DEDUCTION

Taxpayers argue they are entitled to deduct the net operating loss of the corporation from their personal tax return. Taxpayers had $1,000 in capital in the corporation. Yet they claim deductions in excess of $90,000 because the company lost money after taking out and operating on loans that Taxpayers guaranteed. Taxpayers contend the loans they guaranteed were a "capital infusion" for the corporation which "increased the basis of their [personal] Cim Tel [Corporation] stock for federal tax purposes."

I.R.C. § 1374, in effect at the time this matter arose, allowed the net operating loss of an electing subchapter S corpora-

tion to be deducted from the gross income of its shareholders. However, no deduction is allowed for that portion of the net operating loss that exceeds the taxpayer's adjusted basis in his stock. *See* I.R.C. § 1374. The question we consider is: What was Taxpayers' basis in this corporation?

The district court answered the question by embracing the Fourth Circuit's decision in *Leavitt* and held there must be an economic outlay by Taxpayers for there to be an increase in the basis of their stock in the subchapter S corporation. Under *Leavitt*'s reasoning, a shareholder's guaranty of a loan, in and of itself, does not fulfill the economic outlay requirement. *Leavitt*, 875 F.2d at 422.

Taxpayers argue *Leavitt* was wrongly decided or, alternatively, that it has no application to the facts of this case. We are not persuaded. *Leavitt* holds:

> To increase the basis in the stock of a subchapter S corporation, there must be an economic outlay on the part of the shareholder. A guarantee, in and of itself, cannot fulfill that requirement. The guarantee is merely a promise to pay in the future if certain unfortunate events should occur. At the present time, the appellants have experienced no such call as guarantors, *have engaged in no economic outlay*, and have suffered no cost.

*Id.* at 422 (emphasis added) (citations omitted). We are in accord with this reasoning and hold "an economic outlay must be made before a corresponding increase in basis can occur." *Harris v. United States*, 902 F.2d 439, 445 (5th Cir.1990).

Taxpayers, as mentioned, contend they increased their basis in the corporation by guaranteeing the bank's loans to the corporation and this amounted, in substance, to a loan to Taxpayers followed by their contribution of the loan proceeds to the corporation. Identical attempts to circumvent the loss limitation provisions have been repeatedly rejected. *See id.* at 443; *Leavitt*, 875 F.2d at 423–24; *Brown v.*

Sess. at 50, U.S.Code Cong. & Admin.News 1976, pp. 2897, 3485.

*Commissioner*, 706 F.2d 755, 756 (6th Cir. 1983).

Finally, Taxpayers argue they have been good taxpayers all of their lives; the IRS regulations mislead them; and we should disregard the form of the transaction and look to its substance.

We are indeed sympathetic with Taxpayers' plight. The income tax laws and their attendant regulations are unbelievably complex. Had Taxpayers cast these transactions in a different mold, there might have been another result. However, as a court, we are not free to rewrite the tax laws. Nor are we free to call a carrot a cabbage to achieve a desired result. As much as we would like to give Taxpayers relief, it is beyond our power to do so.

The judgment of the district court is AFFIRMED.