949 F.2d 371
 68 A.F.T.R.2d 91-5891, 91-2 USTC P 50,556
 Lawrence R. URI, Jr. and Cathaleen T. Uri, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
Stevens J. TOWNSDIN and Renate Townsdin, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 Nos. 89-9014, 89-9015.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 18, 1991.
 
 Lawrence R. Uri, Jr., of Paulsen, Buechel, Swenson, Uri & Brewer, Chartered, Concordia, Kan., for petitioners-appellants.
 Teresa E. McLaughlin, Tax Div., Dept. of Justice, Washington, D.C. (Shirley D. Peterson, Gary R. Allen, and Richard Farber, Dept. of Justice, with her on the briefs), for respondent-appellee.
 Before HOLLOWAY and BALDOCK, Circuit Judges, and GREENE*, District Judge.
 HOLLOWAY, Circuit Judge.
 
 
 1
 The issue in these consolidated appeals is whether a shareholder in a subchapter S corporation who personally guarantees a bank loan to the corporation may increase his or her adjusted basis in the corporation's stock by the prorated amount of the guarantee in order to increase the available loss deduction under the applicable version of I.R.C. § 1374. In the cases before us, the Tax Court approved the Commissioner's disallowance of petitioners' enhanced loss deductions. Guided by a recent Tenth Circuit opinion concerning this controlling issue, we affirm.
 
 
 2
 The issue presented is one of law. "We review the Tax Court's decision 'in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury.' 26 U.S.C. § 7482. Consequently, we review the Tax Court's determinations of law de novo. See In re Ruti-Sweetwater, Inc., 836 F.2d 1263, 1266 (10th Cir.1988)." Estate of Leder v. Comm'r, 893 F.2d 237, 240 (10th Cir.1989). The facts are thoroughly set forth in the Tax Court's Memorandum Findings of Fact and Opinion. Uri v. Comm'r, 56 T.C.M. (CCH) 1217 (1989). We briefly summarize them here to place the issue in context.
 
 
 3
 During the tax years in question, petitioners Cathaleen Uri and Stevens J. Townsdin[1] were stockholders in The Old Opera House Mall Company (referred to as "the corporation" in this opinion), formed by Mrs. Uri and Mr. Townsdin as the business vehicle for renovation of a building in downtown Concordia, Kansas. After renovation, the corporation planned to operate a small retail mall and a dinner theater in the building. Mrs. Uri and Mr. Townsdin, also partners in an accounting firm, each contributed $10,000 cash to capitalize the corporation and received 50% of the corporation's stock. The corporation elected to be taxed as a small business corporation under subchapter S of the Internal Revenue Code. The corporation borrowed money from a local bank to repay interim loans for construction and equipment. This loan was secured by the real estate and assets of the corporation and by the personal guarantees of Mrs. Uri and Mr. Townsdin. Ninety percent of the loan was also guaranteed by the Small Business Administration (SBA).
 
 
 4
 Unfortunately, after the building was renovated, business was not sufficiently profitable to cover the loan payments, and the corporation suffered severe financial losses. After the SBA sent petitioners a demand for satisfaction under their guarantees on the accelerated note, petitioners filed individually for bankruptcy under Chapter 7 and their personal guarantees of the loan were discharged in the bankruptcy proceedings. Eventually, after strenuous efforts to financially revive the corporation failed, the corporation filed for bankruptcy. Under Chapter 7 liquidation, its real property and other assets were sold at a marshal's sale.
 
 
 5
 I.R.C. § 1374[2] allowed a pro-rata pass-through of net corporate losses to subchapter S corporate shareholders up to the amount of the taxpayer's adjusted basis in corporate stock plus the adjusted basis of the corporation's debt to the same taxpayer. In this case, Mrs. Uri's basis in the corporation's stock and Mr. Townsdin's basis in the corporate stock that resulted from their initial respective investments of $10,000 were extinguished by the losses they claimed on their 1981 returns. However, on Mr. and Mrs. Uri's joint returns for 1982 and 1983 and on Mr. and Mrs. Townsdin's joint return for 1983, petitioners claimed that their adjusted basis included a pro-rata share of the amount of the corporate loan each had personally guaranteed, resulting in their claims of a net business loss deduction for the tax years in question.
 
 
 6
 The Commissioner disallowed these pass-through losses. In denying the amount personally guaranteed as part of petitioners' § 1374 allowance for subchapter S loss pass-through, the Commissioner noted that petitioners were never called upon to make an actual economic transfer for the benefit of the corporation under the guarantee.
 
 
 7
 In their petitions to the Tax Court, petitioners noted that they had suffered considerable economic impact because the guarantees had forced each of them into personal bankruptcy at significant personal financial loss. They noted that the interrelationship of their personal finances, the finances of their joint accounting firm, and the prospective finances of the corporation were all taken into account when the bank extended the loan to the corporation. Petitioners argued that because the loan was made primarily on the strength of their personal financial worth and the income from their accounting business, it was in substance a loan to them and a subsequent contribution by them of the funds to the corporation's capital. In the alternative, they characterized the loan as corporate debt to them because the bank would not have made the loan without their personal guarantees. Under either argument, they claimed that the amount of the guarantee should be part of their pass-through loss limitation under § 1374.
 
 
 8
 The Tax Court denied the taxpayers' petitions, citing its opinion in Estate of Leavitt v. Comm'r, 90 T.C. 206 (1988), aff'd, 875 F.2d 420 (4th Cir.), cert. denied, 493 U.S. 958, 110 S.Ct. 376, 107 L.Ed.2d 361 (1989). Under the Tax Court ruling, petitioners' basis in the corporation's stock was limited to contributions of cash or other property, in accord with the definition of "basis" from I.R.C. § 1012 and the definition of "cost" from Treas.Reg. § 1.1012-1(a). Uri, 56 T.C.M. (CCH) at 1220. The Tax Court held that because petitioners' personal guarantees were neither cash nor other property, the guarantees could not be considered as part of petitioners' adjusted basis in the corporation's stock. Id. In addition, in rejecting application of debt-equity principles to this transaction, the court cited its ruling in Estate of Leavitt, requiring actual economic outlay by petitioners rather than characterizing a mere demand for payment under the guarantee as corporate debt to petitioners. Id. at 1221.[3] Petitioners appealed to this court.
 
 
 9
 Petitioners correctly note a split among the circuits which have considered this issue. Compare Selfe v. United States, 778 F.2d 769 (11th Cir.1985) (approving theory of pro-rata inclusion of personal loan guarantees in shareholders' adjusted basis in subchapter S corporate stock for the purpose of the pass-through loss deduction, emphasizing analysis of whether the lender looked primarily to the shareholder or to the corporate entity for repayment, reversing summary judgment for government and remanding for factual determination whether bank loan to corporation was in reality loan to taxpayer) with Estate of Leavitt (disapproving such inclusion and affirming the Tax Court's decision on the issue, emphasizing that subchapter S shareholders must abide by the form of the transaction of which they are a part, rather than using hindsight to construct an explanation of the transaction which gives them the best tax result) and Brown v. Comm'r, 706 F.2d 755, 756 (6th Cir.1983) (subchapter S shareholder/guarantor must make economic outlay to convert loan guarantee into investment). After this appeal was filed two more circuits, including this one, have considered the issue and joined the Fourth and Sixth Circuits in their analysis, leaving the Eleventh Circuit alone in the minority position. See Goatcher v. United States, 944 F.2d 747 (10th Cir.1991); Harris v. United States, 902 F.2d 439 (5th Cir.1990).
 
 
 10
 We are bound by our decision in Goatcher. There, this court refused to recharacterize a transaction as a different relationship between the parties than that reflected on the face of the financial documents used to structure the transaction. Under Goatcher, taxpayers must choose a form for transactions which accurately reflects the substance of the transactions.[4] The same requirement can be applied to petitioners' "debt-equity" argument here. They contend that the loan from the bank to the "thinly capitalized" corporation, personally guaranteed by the shareholders, was in substance a loan to the shareholders themselves, who then contributed the loan proceeds to the corporation as a capital infusion. However, Goatcher's analysis that the form of a taxpayer's transactions govern the tax ramifications of those transactions, Goatcher, 944 F.2d at 752, applies to this argument as well. Recharacterization of the transaction in pursuit of tax advantages was properly disallowed under the then-current statute.
 
 
 11
 In addition to the arguments discussed above focusing on the personal guarantees by the taxpayers of the debts of the corporation, the taxpayers argued two additional issues, i.e., whether deductions for accrued interest by the corporation were proper because prospect of repayment was not so unlikely as to destroy the existence of a valid debt, and whether depreciation taken by the corporation was proper because the assets were not abandoned and continued to be held for the production of income. The Tax Court declined to decide these latter two issues, finding that the determination of the basic issue we have discussed earlier made a decision on the remaining issues unnecessary. We agree with that determination of the Tax Court and likewise find it unnecessary to treat the additional two issues.
 
 
 12
 Accordingly, the decisions of the United States Tax Court are AFFIRMED.
 
 
 
 *
 The Honorable J. Thomas Greene, United States District Judge of the District of Utah, sitting by designation
 
 
 [1]
 Mrs. Uri and Mr. Townsdin were individual stockholders in the corporation. Mr. Uri and Mrs. Townsdin were also petitioners in this tax appeal because they filed joint returns with their respective spouses
 
 
 [2]
 Section 1374 was reenacted in 1982 as § 1366(d)(1) in pt. II of the Subchapter S Revision Act of 1982, Pub.L. 97-354, 96 Stat. 1669, 1678. All references to the Internal Revenue Code in this opinion refer to the version of that statute in effect during the tax years in question
 
 
 [3]
 Petitioners submitted two other arguments which the Tax Court rejected. Petitioners' suggested that the Tax Court look to I.R.C. provisions concerning partnership taxation for an analogous situation and rules. The Tax Court correctly noted that the partnership taxation statutes apply to partnerships, but not to the subchapter S corporation which Mrs. Uri and Mr. Townsdin elected to establish. Uri, 56 T.C.M. (CCH) at 1221
 In addition, petitioners postulated that the "at-risk" loss limitations of I.R.C. § 465 would not disallow the increased pass-through loss deduction which they sought. However, the Tax Court correctly noted that § 465's provisions operate as a limitation placed on the loss deductions allowed by other provisions, including § 1374, rather than as independent or primary screening provisions. Id.; see I.R.C. § 465(a)(1) ("any loss from [an activity to which this section applies] shall be allowed only to the extent ... the taxpayer is at risk").
 
 
 [4]
 It is permissible for the government to look behind the form of a transaction to its substance if the transaction is a sham intended for improper tax avoidance
 A taxpayer is free to adopt such organization for his affairs as he may choose and having elected to do some business as a corporation, he must accept the tax disadvantages.
 On the other hand, the Government may not be required to acquiesce in the taxpayer's election of that form for doing business which is most advantageous to him. The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation.
 Higgins v. Smith, 308 U.S. 473, 477-78, 60 S.Ct. 355, 357-58, 84 L.Ed. 406 (1940). Compare Heyen v. United States, 945 F.2d 359, 363 (10th Cir.1991) (in context of analysis of improper gift tax avoidance, "substance over form analysis applies to gift tax, as well as to income tax, cases") with Goatcher, 944 F.2d at 752 (rejecting taxpayer's request that the court "disregard the form of the transaction and look to its substance"). See also Harris, 902 F.2d at 443:
 Ordinarily, taxpayers are bound by the form of the transaction they have chosen; taxpayers may not in hindsight recast the transaction as one that they might have made in order to obtain tax advantages. The IRS, however, often may disregard form and recharacterize a transaction by looking to its substance.
 (citations omitted).