T.C. Memo. 1998-255


UNITED STATES TAX COURT


NEIL J. CHRISTAL, II & KATHRYN E. CHRISTAL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12793-96.                    Filed July 13, 1998.


<u>Dana C. Christian</u> and <u>David Prince</u>, for petitioners.

<u>Laurel Robinson</u> and <u>Thomas G. Schleier</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined a deficiency of
$36,856, an addition to tax under section 6651(a)(1) of $9,193,
and a penalty under section 6662(a) of $7,371 in petitioners'
1992 Federal income tax.[1]

---

[1] All section references are to the Internal Revenue Code
in effect for the year in issue, and all Rule references are to
(continued...)

The issue for decision is whether United Sovereigns "A Trust" (United Sovereigns) is a nullity or sham trust.[2]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners Neil J. Christal (Mr. Christal) and Kathryn E. Christal (Mrs. Christal), husband and wife, resided in Belmont, California, at the time they filed their petition.

In 1986, Mr. Christal, Gregory Phelps (Mr. Phelps), and Dan Cantore formed a corporation named United Sovereigns, Inc. United Sovereigns, Inc., was a "multi-level" organization which promoted the principles of network marketing and offered services and activities to customers including, but not limited to, a monthly newsletter, tax services, and estate planning. The customers of United Sovereigns, Inc., paid $50 a month to receive these services. Customers of United Sovereigns, Inc., could have the monthly fee withdrawn automatically from their bank account

---

[1](...continued)
the Tax Court Rules of Practice and Procedure.

[2] The statutory notice of deficiency sets forth numerous adjustments. In their briefs, petitioners only address whether United Sovereigns was a nullity or sham trust and fail to address any other adjustments in the notice of deficiency. Therefore, we find that petitioners have abandoned all issues other than whether United Sovereigns was a nullity or sham trust. Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989).

by Electronic Funds Transfer Services (EFTS) which would transmit the payment to United Sovereigns, Inc.

Mr. Christal and Linda Menon (Ms. Menon) were the signatories on the bank account of United Sovereigns, Inc. In 1990, United Sovereigns, Inc., reported total income of $150,194 on its Form 1120 tax return. In 1989 and 1990, Mr. Christal received income from United Sovereigns, Inc., in the amounts of $41,927 and $35,225, respectively. During this time, Mr. Christal was the president of United Sovereigns, Inc.

During 1990, United Sovereigns, Inc., used 2228 S. El Camino Real #400, San Mateo, California, as its mailing address. United Sovereigns, Inc., used office space at 1941 O'Farrell Street, Room 8, San Mateo, California.

On November 10, 1990, United Sovereigns, Inc., ceased doing business. On December 15, 1990, Mr. Christal and Mr. Phelps commenced dissolving and winding up the affairs of United Sovereigns, Inc. At the time of the closure of United Sovereigns, Inc., Mr. Christal and Mr. Phelps each held 33a shares of United Sovereigns, Inc.[3]

---

[3] Although the record is unclear, it appears that Dan Cantore owned the remaining 33a shares of United Sovereigns, Inc.

On October 30, 1990, United Sovereigns "A Trust" was formed.[4] United Sovereigns' stated purpose was: "To provide for the administration of the assets by natural or corporate persons acting in a fiduciary capacity to preserve, conserve, maintain, invest, and develop the assets for the benefit of the certificate holders and in a manner designated in this instrument."

The trust document listed Mr. Phelps as the grantor of United Sovereigns. Mr. Christal was appointed as trustee of United Sovereigns. Mr. Christal then selected and appointed Ms. Menon as a United Sovereigns trustee. United Sovereigns' trustees were to act as "unbiased, independent fiduciaries in the best interests of the certificate holders, and in strict conformity with the guidelines and requirements of this trust instrument." During 1992, Mr. Christal and Ms. Menon were the trustees of United Sovereigns.

The funds of United Sovereigns, Inc., including its bank account, were placed into United Sovereigns' checking account.[5] Mr. Christal and Ms. Menon were the signatories on United Sovereigns' checking account.

---

[4] We use the words "trust", "trust document", "trustee", "grantor", and "form" in our findings of fact for convenience only. We do not intend our use of these terms to indicate any conclusion about the substance of the transactions at issue.

[5] According to the trust document, the only property placed into United Sovereigns was "checking and savings accounts". This appears to be a mistake, which neither of the parties clarifies, as only one bank account was placed into United Sovereigns.

Amaranth Holding Trust (Amaranth) held the 100 certificates of interest issued by United Sovereigns. In 1989, petitioners formed Amaranth. Amaranth issued 100 certificates of interest-- 50 to Mr. Christal and 50 to Mrs. Christal. Petitioners continued to hold the Amaranth certificates up to and through 1992. Thus, petitioners, through Amaranth, were the ultimate beneficiaries of United Sovereigns.

Mr. Christal had the power to distribute the principal or income of United Sovereigns to Amaranth or to convert the trust property into cash and distribute it to its certificate holders for their support, care, maintenance, education, medical expenses, or emergencies. Additionally, United Sovereigns could only be terminated with the approval of its current beneficiaries.

United Sovereigns promoted the principles of network marketing and offered services and activities to customers including, but not limited to, a monthly newsletter, tax services, and estate planning. Customers of United Sovereigns paid $50 a month to receive these services. The customers could have the monthly fee withdrawn automatically from their bank account by EFTS which would transmit the payment to United Sovereigns. In 1992, United Sovereigns reported total income of $144,976 on its Form 1041.

During 1992, Mr. Christal was the president of United Sovereigns, and as such he had the day-to-day, hands-on responsibility for the operation of United Sovereigns. Mr. Christal wanted to maintain uniformity between United Sovereigns and United Sovereigns, Inc. United Sovereigns took over the client base of United Sovereigns, Inc. United Sovereigns maintained the same policies and procedures as United Sovereigns, Inc. United Sovereigns used the forms and stationery of United Sovereigns, Inc., in conducting its business, although it sometimes crossed out "Inc." In 1992, United Sovereigns used the same mailing address and office space that United Sovereigns, Inc., used in 1990.

During 1992, Alta Business Services (Alta), which Ms. Menon owned and operated, provided bookkeeping services to United Sovereigns. Alta provided the same services to United Sovereigns, Inc., and to other business entities.

United Sovereigns did not have a formal system for Ms. Menon, as trustee, to inform Mr. Christal that she disagreed with his United Sovereigns expenditures except through a bookkeeping system in which expenses were recorded and reports were generated and reviewed.

From January through May of 1992, Alta issued bookkeeping reports prepared by Ms. Menon and Yury Bajgrowicz (Mr. Bajgrowicz) which requested information about certain United

Sovereigns checks (such as the amount, or category, of the check) written on United Sovereigns' checking account. After May of 1992, Alta issued bookkeeping reports prepared only by Mr. Bajgrowicz. Alta issued the bookkeeping reports only to Mr. Christal. There is no indication that Ms. Menon ever challenged any of United Sovereigns' expenditures.

During 1992, the employees of United Sovereigns were Mr. Christal and Jacqueline Johanson (Ms. Johanson). Ms. Johanson was the administrative assistant. In 1992, United Sovereigns paid (as cash disbursements) approximately $4,800 to Mr. Christal and approximately $17,100 to Ms. Johanson. Mr. Christal reported $6,000 in wages from United Sovereigns on his 1992 Form 1040 tax return.

In 1992, the only vehicle used for United Sovereigns' business was a 1984 Volvo (the Volvo). Mr. Christal did not provide a mileage log for the use of the Volvo. Amaranth owned the Volvo and a 1989 Dodge Caravan (the Caravan).

In 1992, United Sovereigns claimed automobile expenses in the amount of $2,600 representing lease payments made to Amaranth for the Volvo. Amaranth and United Sovereigns, however, did not have a written rental agreement with respect to the lease of the Volvo.

On March 16, 1992, Ms. Menon signed United Sovereigns' check 2239 which was payable to Redwood City Dodge in the amount of

$543.45. The receipt listed Mr. Christal, and not United Sovereigns, as the customer. The automobile repaired was the Caravan, and the receipt was stamped "paid" with check 2239 noted on the receipt. Mrs. Christal signed the receipt.

In 1992, United Sovereigns paid for automobile work completed on the Caravan in the amount of $429.05 with United Sovereigns' check 3103. United Sovereigns claimed the $429.05 spent on the Caravan as a business expense.

In 1992, United Sovereigns claimed $559.97 it paid to Competition Motors as an automobile expense. The Competition Motor receipt listed Mr. Christal, and not United Sovereigns, as the customer.

On January 10, 1991, Mr. Christal signed a Pioneer Health insurance application. In 1992, United Sovereigns paid for the Pioneer Health insurance which covered petitioners and their children, and it deducted the policy's full cost on its 1992 tax return. United Sovereigns did not pay health insurance premiums for Ms. Menon or Ms. Johanson.

In 1992, United Sovereigns paid for a Price Club membership. Mr. and Mrs. Christal's names were on the Price Club application. No other names were on the Price Club application. United Sovereigns claimed the Price Club membership fee as a supply.

In 1992, United Sovereigns paid for a Reader's Digest subscription for Mrs. Christal and claimed the subscription as a

dues and publications expense.  Additionally, Reader's Digest billed Mr. Christal for Condensed Books at his home address. United Sovereigns paid the outstanding bill and claimed the expense as a dues and publications expense.

Mr. Christal submitted receipts from restaurants or grocery stores for food purchases as substantiation for United Sovereigns' office supplies and "promo" expenses.  Additionally, Mr. Christal submitted receipts, which referenced Mrs. Christal, from Matol Botanical International for the purchase of five bottles worth $35 each as substantiation of United Sovereigns' office expenses.

Throughout 1992, $6,900 was withdrawn as petty cash from United Sovereigns' checking account.  Petitioners maintained no record of how that cash was spent.

## OPINION

Petitioners contend that United Sovereigns is a valid entity, legally independent and separate from Mr. Christal as an individual, and that United Sovereigns and the transactions in which it took part should be respected for Federal tax purposes. Respondent contends that United Sovereigns is a sham, it has no economic substance, and United Sovereigns existed for no purpose aside from being used to obtain tax benefits for petitioners; thus, the income of United Sovereigns is taxable wholly to petitioners.  We agree with respondent.

A fundamental principle of tax law is that income is taxed to the person who earns it. Commissioner v. Culbertson, 337 U.S. 733, 739-740 (1949); Lucas v. Earl, 281 U.S. 111 (1930). An assignment of income to a trust is ineffective to shift the tax burden from the taxpayer to a trust when the taxpayer controls the earning of the income. Vnuk v. Commissioner, 621 F.2d 1318, 1320 (8th Cir. 1980), affg. T.C. Memo. 1979-164.

Taxpayers have the right to conduct their transactions in such a manner and form as to minimize or altogether avoid the incidence of taxation by whatever means the law permits. Gregory v. Helvering, 293 U.S. 465, 469 (1935). This right, however, does not bestow upon taxpayers a right to structure a paper entity to avoid taxation when that entity is without economic substance. Zmuda v. Commissioner, 79 T.C. 714, 719 (1982), affd. 731 F.2d 1417 (9th Cir. 1984). The Commissioner is not required to apply the tax laws in accordance with the form a taxpayer employs where that form is a sham or inconsistent with economic reality. Higgins v. Smith, 308 U.S. 473, 477 (1940). Application of these principles requires us to look beneath the surface of the entity and transactions at issue to examine their reality. Professional Servs. v. Commissioner, 79 T.C. 888, 924 (1982).

Where an entity is created that has no real economic effect and which affects no cognizable economic relationships, the

substance of a transaction involving this entity will control over its form. Zmuda v. Commissioner, 731 F.2d at 1420-1421; Markosian v. Commissioner, 73 T.C. 1235, 1241 (1980). If a trust has no economic substance apart from tax considerations, the trust is not recognized for Federal tax purposes. Markosian v. Commissioner, supra at 1244-1245; Furman v. Commissioner, 45 T.C. 360, 364 (1966), affd. per curiam 381 F.2d 22 (5th Cir. 1967). These principles apply even though an entity may have been properly formed and have a separate existence under applicable local law. Zmuda v. Commissioner, 79 T.C. at 720.

Whether a trust lacks economic substance for tax purposes is a factual question to be decided on the basis of the facts before the Court. Paulson v. Commissioner, T.C. Memo. 1991-508, affd. per curiam 992 F.2d 789 (8th Cir. 1993) (citing United States v. Cumberland Pub. Serv. Co., 338 U.S. 451 (1950)). Additionally, when the settlor is trustee and the beneficiaries are the settlor and his family, such trust arrangements must be closely scrutinized for economic substance. Markosian v. Commissioner, supra at 1245; see Helvering v. Clifford, 309 U.S. 331, 334 (1940). Petitioners bear the burden of proof. Rule 142(a).

We consider the following factors to determine whether a purported trust lacks economic substance for Federal income tax purposes: (1) Whether the taxpayer's relationship, as grantor, to the property differed materially before and after the trust's

formation; (2) whether the trust had an independent trustee; (3) whether an economic interest passed to other beneficiaries of the trust; and (4) whether the taxpayer felt bound by any restrictions imposed by the trust itself or the law of trusts. See Zmuda v. Commissioner, 79 T.C. at 720-722; Markosian v. Commissioner, supra at 1243-1245; Hanson v. Commissioner, T.C. Memo. 1981-675, affd. per curiam 696 F.2d 1232 (9th Cir. 1983).

With respect to the first factor, we look to the economic reality of a purported arrangement to determine who actually is the settlor of a trust, whether or not named as settlor in the related documents. Zmuda v. Commissioner, 79 T.C. at 720. Although the documents list Mr. Phelps as the settlor of United Sovereigns, it appears that Mr. Phelps acted merely as a "straw man" to form United Sovereigns. We note that Mr. Phelps, the supposed grantor of United Sovereigns, was not called as a witness. We infer that his testimony would not have been favorable to petitioners. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

Mr. Christal had signatory authority over the bank account of United Sovereigns, Inc., before and after its transfer to United Sovereigns. Mr. Christal claims that his portion of the United Sovereigns, Inc., moneys left over at its dissolution was used to pay off the debts of United Sovereigns, Inc. There is no

evidence, however, of the amount of the debts that existed, what the debts entailed, or how these debts were paid. Furthermore, petitioners have not produced any documentation or records of how the assets of United Sovereigns, Inc., were divided among its shareholders. We again infer that Mr. Phelps' testimony regarding these facts would not have been favorable to petitioners. Id.

United Sovereigns' business was the same as that of United Sovereigns, Inc. Mr. Christal made all important business decisions with little or no input from anyone else, he controlled United Sovereigns' earning of income, and he dealt with that income as his own. This factor points to a sham.

We find likewise with respect to the second factor; i.e., United Sovereigns lacked a bona fide independent trustee. The failure of a nominal trustee to have any meaningful role in the operation of the trust has been repeatedly cited by this Court as evidence that the entity lacks economic substance. See, e.g., Zmuda v. Commissioner, 79 T.C. at 720-721; Para Techs. Trust v. Commissioner, T.C. Memo. 1994-366, affd. without published opinion sub nom. Anderson v. Commissioner, 106 F.3d 406 (9th Cir. 1997). Additionally, Mr. Christal had signature authority over United Sovereigns' bank account, which meant that he had access to the funds contained therein. Contrary to the assertions of Mr. Christal and Ms. Menon, Ms. Menon could not and did not

prevent Mr. Christal from using United Sovereigns' property for his own purposes.

As to the third factor, we find no probative evidence in the record to indicate that petitioners transferred an economic interest to a third party.  Based on our review of the record, we are satisfied that petitioners are the beneficiaries of United Sovereigns.

As to the fourth factor, we find that Mr. Christal was not in practice bound by any restrictions imposed by United Sovereigns' trust instrument or the law of trusts as to the use of the transferred property.  His unrestricted use of United Sovereigns' property leads us to believe that Mr. Christal was not in fact restricted in any meaningful manner, including fiduciary restraints.

Additionally, petitioners presented no credible evidence that any purpose other than tax avoidance was served by the entity to which Mr. Christal transferred his business activities. From the foregoing, we conclude there was no nontax purpose for the creation of United Sovereigns, and in accordance with Markosian v. Commissioner, supra, and the numerous opinions relying thereon, we conclude that United Sovereigns lacked economic substance for Federal tax purposes.  Accordingly, we hold that the trust structure of United Sovereigns shall not be

respected for Federal income tax purposes, and the income from United Sovereigns is taxable wholly to petitioners.

In reaching all of our holdings herein we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.