T.C. Memo. 1999-172


UNITED STATES TAX COURT


C. EARL ALSOP, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos.  8908-94, 10899-97,          Filed May 20, 1999.
            10900-97, 10901-97.


<u>John R. Riley</u>, for petitioners.

<u>Richard W. Kennedy</u>, for respondent.

---

[1]     Cases of the following petitioners are consolidated
herewith:  Mountain Meadows Trust, Jay Zabriskie, Trustee, docket
No. 10899-97; C. Earl Alsop, docket No. 10900-97; and F.C.H.C.
Trust, Jay Zabriskie, Trustee, docket No. 10901-97.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, Judge:  In these consolidated cases, respondent determined deficiencies in petitioners' Federal income taxes, additions to tax, and accuracy-related penalties as follows:

|  |  | Additions to Tax | | Accuracy-Related Penalty |
| --- | --- | --- | --- | --- |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654 | Sec. 6662(a) |
| C. Earl Alsop | | | | |
| 1991 | $38,259 | $ 9,565 | $2,202 | -- |
| 1992 | 38,185 | 9,546 | 1,665 | -- |
| 1993 | 54,933 | -- | -- | $10,987 |
| 1994 | 63,709 | -- | -- | 12,742 |
| FCHC Trust | | | | |
| 1992 | $34,600 | $ 8,650 | -- | $ 6,920 |
| 1993 | 57,203 | 14,301 | -- | 11,441 |
| 1994 | 62,538 | -- | -- | 12,508 |
| Mountain Meadows Trust | | | | |
| 1993 | $57,203 | $14,301 | -- | $11,441 |
| 1994 | 62,538 | -- | -- | 12,508 |

After settlement, the primary issue for decision is whether two trusts[2] that petitioner established are to be disregarded for Federal income tax purposes and whether petitioner C. Earl Alsop (Alsop) is to be charged with income of

---

[2]    By the mere use of the term "trusts" we intend no implication as to whether the trusts should be recognized for Federal income tax purposes.

a chiropractic practice.[3]  All references to petitioner are to
C. Earl Alsop.

Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petitions were filed, Alsop and the named
trustee of petitioner's trusts resided in Utah.  Alsop was
licensed in the State of Utah as a chiropractor.

In May of 1992, Alsop established two trusts to which he
purported to transfer the assets and ownership of a chiropractic
business that he had operated for a number of years as a sole
proprietor.  Alsop, his wife, children, and grandchildren held
the legal and beneficial ownership interests in the trusts.  The
named trustee of the trusts was a personal friend of Alsop who
did not function as trustee of the trusts, who was not
compensated, and who rendered no services to or for the trusts.

---

[3]     For each year, as a protective measure, respondent charged
the two trusts that Alsop established with income that respondent
also charged to Alsop individually.  If we sustain the tax
deficiencies respondent determined against Alsop, we understand
that respondent will concede the tax deficiencies, additions to
tax, and accuracy-related penalties determined against the
trusts.

The language of the trust documents reflected language typical of abusive, sham trusts. It provided generally that the trusts would pay for "living" and entertainment expenses of trust officers. It provided further as follows:

> ALL MINUTES of this trust are inviolable. That is to say, that this trust's minutes are to remain ABSOLUTELY PRIVATE and they are not to be loaned, borrowed, read, or disclosed by ANYONE. Moreover, ALL MINUTES are beyond the purview of any person, other than the Trustee(s), as evidenced by the following decision of the U.S. Supreme Court: The Trustees for the Trust Estate have all the power necessary to carry out their trust and their books and records are NOT subject to review or subpoena Duces Te Cum * * *

At the time the trusts were established, the name on the bank accounts that Alsop used in connection with his chiropractic practice was changed to the name of one of the trusts. With regard to charges for services Alsop provided to patients of the chiropractic practice, Alsop instructed the insurance companies to make the related payments not to him, but to the trusts. Other than these two changes, after the trusts were established, Alsop continued to conduct the chiropractic practice and to treat patients under the same business name, at the same office, and in the same manner as he in prior years had treated the patients. Alsop and his secretary continued to sign the checks relating to the chiropractic practice.

Periodic distributions were made from the trusts to Alsop and to family members who were designated beneficiaries of the trusts. Evidence in the record, however, does not indicate the amount or date of distributions from the trusts.

In years prior to 1991, Alsop filed individual Federal income tax returns in which he falsely claimed he was a nonresident alien of the United States and on which tax returns Alsop reported no income tax liability relating to income of his chiropractic practice.

Alsop did not file individual Federal income tax returns for 1991 and 1992 until March 19, 1996, just prior to the trial herein. In October 1994, and October 1995, respectively, Alsop filed his 1993 and 1994 individual Federal income tax returns.

On his 1991 untimely filed Federal income tax return, Alsop reported gross receipts of $188,020, cost of goods sold of $32,059, expenses of $122,290, and net profits of $30,788 relating to his chiropractic practice.

On his 1992 untimely filed Federal income tax return, Alsop reported gross receipts, expenses, and net profits relating to the chiropractic practice only for January through April, reflecting the months before the trusts were created.

On his 1993 Federal income tax return, Alsop reported gross receipts of $13,517, no expenses, and net profits of $13,517 relating to the chiropractic practice.

On his 1994 Federal income tax return, Alsop reported gross receipts of $12,000, expenses of $4,257, and net profits of $7,743 relating to the chiropractic practice.

For 1992, 1993, and 1994, respectively, the trusts that Alsop established filed untimely U.S. Fiduciary Income Tax Returns.[4] On the trust income tax returns that were filed with respondent, certain amounts of gross receipts, expenses, and net profits relating to the chiropractic practice were reported. Also, however, on the income tax returns of the trusts that were filed with respondent, deductions were claimed for purported distributions of trust income to the trust beneficiaries. As a result of the distribution deductions that were claimed for each trust, for 1992, 1993, and 1994, negative taxable income and zero Federal income tax liability were reported for the trusts.

On his Federal income tax returns for 1992, 1993, and 1994, Alsop did not report as taxable income any distributions from the trusts. The record does not reflect whether other beneficiaries of the trusts reported as taxable income on their Federal income tax returns distributions they received from the trusts.

On audit, Alsop was not cooperative, and he did not provide respondent with copies of the trust documents until a court order to do so was issued on January 17, 1997. After reviewing the

---

[4]    For 1992, one of the trusts that Alsop established has yet to file a U.S. Fiduciary Income Tax Return.

trust documents, respondent determined that the trusts were sham trusts and that all gross receipts, expenses, and net profits relating to the chiropractic practice were to be charged to Alsop individually.

On April 29, 1998, by a supplemental stipulation of facts, for 1991, 1992, 1993, and 1994, Alsop and respondent agreed to the total gross receipts, costs of goods sold, expenses, and net profits relating to the chiropractic practice as follows:

| Year | Gross Receipts | Cost of Goods Sold | Expenses | Net Profits |
|------|------|------|------|------|
| 1991 | $188,020 | $34,942 | $103,831 | $49,247 |
| 1992 | 178,098 | 22,265 | 90,820 | 65,013 |
| 1993 | 150,535 | 26,277 | 87,299 | 36,959 |
| 1994 | 158,575 | 30,428 | 67,867 | 60,280 |

OPINION

As a fundamental principle of Federal income tax law, income is taxed to the person who earns the income. See United States v. Basye, 410 U.S. 441, 450 (1973); Commissioner v. Culbertson, 337 U.S. 733, 739-740 (1949); Lucas v. Earl, 281 U.S. 111, 114-115 (1930); Holman v. United States, 728 F.2d 462, 464 (10th Cir. 1984); Leavell v. Commissioner, 104 T.C. 140, 148 (1995).

The tax laws do not recognize sham transactions or transactions that contradict economic reality. See Higgins v. Smith, 308 U.S. 473, 477 (1940); Uri v. Commissioner, 949 F.2d 371, 374 (10th Cir. 1991), affg. T.C. Memo. 1989-58. Where the

establishment of trusts has no real economic effect, the substance of the transactions involving the trusts will control over the form. See <u>Zmuda v. Commissioner</u>, 731 F.2d 1417, 1420-1421 (9th Cir. 1984), affg. 79 T.C. 714, 719 (1982); <u>Markosian v. Commissioner</u>, 73 T.C. 1235, 1241 (1980); <u>Christal v. Commissioner</u>, T.C. Memo. 1998-255.

This Court and the U.S. Courts of Appeals have long rejected attempts similar to Alsop's herein to avoid taxation by the use of abusive family trusts. See <u>Holman v. United States</u>, <u>supra</u>; <u>Hanson v. Commissioner</u>, 696 F.2d 1232 (9th Cir. 1983), affg. per curiam T.C. Memo. 1981-675; <u>Schulz v. Commissioner</u>, 686 F.2d 490 (7th Cir. 1982), affg. T.C. Memo. 1980-568; <u>Vnuk v. Commissioner</u>, 621 F.2d 1318 (8th Cir. 1980), affg. T.C. Memo. 1979-164; <u>Vercio v. Commissioner</u>, 73 T.C. 1246 (1980); <u>Wesenberg v. Commissioner</u>, 69 T.C. 1005 (1978); <u>Buckmaster v. Commissioner</u>, T.C. Memo. 1997-236. Such trusts are treated as lacking in economic substance and as constituting a nullity for Federal income tax purposes. See <u>Hanson v. Commissioner</u>, <u>supra</u>; <u>Markosian v. Commissioner</u>, <u>supra</u>; <u>Wenz v. Commissioner</u>, T.C. Memo. 1995-277.

Attempts by chiropractors, in particular, who have sought to avoid taxation on income relating to their chiropractic practices by assigning or attributing income from the practices to "family trusts" have been rejected. See <u>Sandvall v. Commissioner</u>,

898 F.2d 455 (5th Cir. 1990), affg. T.C. Memo. 1989-189; <u>Kelley v. Commissioner</u>, T.C. Memo. 1983-322.

Alsop argues that the trusts he established constitute valid business entities that should be recognized as taxable entities and that the gross receipts, expenses, and net profits relating to the chiropractic practice should be charged to the trusts. Respondent contends that the trusts constitute sham family trusts that lacked economic reality, that the trusts were used only for tax avoidance purposes, and that the agreed net profits of the trusts are chargeable to Alsop. We agree with respondent.

The evidence establishes that Alsop's chiropractic practice operated essentially the same after the trusts were established as it did before the trusts were established. Alsop continued treating patients at the same office under the same business name. Alsop and his secretary continued to sign the checks relating to the chiropractic practice. The trustee did not perform any duties as trustee regarding the chiropractic practice, and the trustee received no compensation. Alsop retained control over his chiropractic practice and over the receipts, expenses, and taxable income relating to the chiropractic practice.

The evidence in the record is not complete as to what, how much, and to whom distributions were made from the trusts and as to how beneficiaries of the trusts reported on their Federal

income tax returns distributions they received from the trusts. The totality of the evidence, however, establishes that the trusts Alsop established in May of 1992 were shams. The trusts lacked economic substance, and they are not to be recognized for Federal income tax purposes.

In light of our holding on the above issue, we need not address an alternative argument made by respondent that under the grantor trust rules Alsop should be taxed on the trust income.

With regard to the additions to tax and accuracy-related penalties determined by respondent, Alsop makes no separate argument, and we sustain respondent's determination of the additions to tax and penalties.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.